## Miller's Estate.    Miller & Co.'s Appeal.

[Marked to be reported.]

*Decedents' estates—Claim—Sale of interest in partnership.*

A wife loaned $1,300 to a partnership of which her husband was a member. Without the wife's knowledge the husband drew out the whole amount of the loan from the firm on checks to his own order, signed with the firm name, but with the wife's name on the stubs. None of the money was paid to the wife. Subsequently the husband died. After the husband's death his interest in the partnership was sold by his administrator to another person, who with one of the old partners continued the business, and agreed to pay the debts of the old firm. The wife presented her claim for the payment of her loan, and the claim was paid by the new firm. The firm then presented its claim for payment of the loan out of the husband's estate. At the audit it appeared that the wife had participated in the ne-

gotiations leading to the sale of decedent's interest in the firm and had fixed the value of her own share in it. It also appeared that in the transaction the debt of $1,300 due by decedent to the firm had not been paid or provided for. *Held*, that the claim should be allowed.

Argued April 12, 1893. Appeal, No. 138, Jan. T., 1893, by Wm. M. Miller & Co., from O. C. Luzerne Co., dismissing exceptions to adjudication of account of Peoples Bank of Wilkes-Barre, administrator of Wm. M. Miller, deceased. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and THOMPSON, JJ.

Adjudication of administrator's account.

The facts are stated in the opinion of the auditing judge as follows, by RHONE, P. J.:

" By agreement dated March 26, 1891, The People's Bank of Wilkes-Barre, administrator of the estate of this decedent, assigned, transferred and sold to F. J. Leavenworth, all the right, title, interest, claim and demand of the estate in and to the goods, stocks, credits, etc., of the firm of W. M. Miller & Co., ' subject to the payment by said Leavenworth of the debts of said firm to outside parties, against which he agrees to indemnify the estate of said Miller.' The consideration named in the writing of the above date is $34,800. This writing refers to another dated March 25, 1891, and makes the latter a part of it.

" The paper of March 25th is between said Leavenworth and the mother and widow of the decedent, the two being the only heirs to the estate. After the recital of the purchase by Leavenworth of the interests of the other members of the firm of Miller & Co., this paper of March 25, 1891, sets forth that the said mother and widow of the decedent, together with the other members of the late firm of Miller & Co., assign, transfer, etc., to the said Leavenworth all their right, title and interest in and to the goods, stocks, credits, etc., in the firm of Miller & Co., being the two thirds of the whole partnership, including the debts due by said firm to Miller's estate and to Carr ; authorizing Miller's administrator to make the transfer. The consideration named in this paper, No. 1, payable to Miller's estate, is $34,800.

" In the second preamble to this paper it is stated that the

sale is to be 'subject to the debts of said firm to all creditors of said firm, excepting to the estate of W. M. Miller, deceased, whose claims against the said firm are all included in the above consideration.'

"In brief, then, according to these papers, the administrator of Miller's estate sold to Leavenworth all the decedent's interest in the late firm, subject to the debts of the firm.

"It appears that at the time of this sale the firm was indebted to Mrs. Hettie S. Miller, widow of the decedent, on a note dated October 29, 1888, for $1,300, with interest to January 1, 1891. This sum was loaned to the firm. On the stubs of the check book of the firm it appeared that this loan had been paid with checks, and the books of the firm charged the checks up to Mrs. Miller. It now turns out that Miller appropriated the proceeds of these checks to his own use and did not pay the debt to his wife.

"These facts were known to Leavenworth before the purchase by him, and he and his associates in the deal took up this note and gave Mrs. Miller a new note for the amount.

"Previous to the purchase of the Miller interest, Leavenworth had purchased the interest of the other members of the firm on the faith and credit of the firm's books that the loan from Mrs. Hettie S. Miller had been paid, and the negotiations for the purchase of the Miller interest commenced with the same understanding by Leavenworth. But before the close of the purchase of the Miller interest, Mrs. Miller, the widow, made known her claim to Leavenworth and demanded the payment of it, before she would consent to the sale. Leavenworth paid the note before closing the negotiations for the purchase with the understanding that such payment was not any part of the consideration or amount he was to pay for the goods, etc. Leavenworth paid the note as one of the debts of the firm, as per the agreement, and now claims that the estate of W. M. Miller owes him the amount on account of the false entry appearing in the books ; while the widow, and through her the administrator, claims that the payment of the note was a part of the consideration money for the goods, etc., and that the true state of affairs was as fully known to Leavenworth before the sale as since.

"From this statement of facts it seems to us that Leaven-

worth and his associates have no lawful claim against this estate. By the writings he agrees to pay all the debts of the firm, and before he executed this agreement he knew of this debt. But for this full knowledge, he might have been entitled to the claim on the ground of deception, but as all the facts appeared at the time of the payment of the note, he has no right to claim that he was negotiating on the facts as they appeared to him at the commencement of the negotiations.

" We also feel justified in concluding that under all the circumstances Mrs. Miller had a right to conclude that the payment of the note was a part of the consideration money paid for the goods, notwithstanding Mr. Leavenworth's understanding to the contrary. It was his duty, we repeat, to consider all of the facts in the case as they were presented at the closing of the purchase, and not as they stood at the beginning of the negotiations.

" Before he can expect us to modify his written contract, some fraud, accident or mistake, growing out of facts appearing since the execution of it, must be shown, and this he has not done. First, last and all the time he agreed to pay the debts of the firm, and the note of Mrs. Miller was made known to him as one of the debts, even if it did not enter directly into the amount of consideration money expressed in the contract.

" Again, the real parties to the contract of sale now under consideration are Mr. Leavenworth and the widow, the administrator being stakeholder. The widow was both heir and creditor at the completion of the contract. As heir she was entitled to one half of this fund, as creditor she was entitled to have her debt paid, and it does not seem reasonable that she would exact the mere payment of the entire note as a stranger to the estate, at the same time negotiating that she would repay the one half of it on account of a fraud committed by her husband. The weight of evidence does not lead to this result. . . .

" The whole case seems to turn on the definition of the term 'subject to the debts of the firm to all creditors.' These debts Leavenworth agreed to pay, whatever the amount and to whomsoever due. He took the risk of ascertaining the amount, but in the case in question the amount was clearly established before the sale was consummated. The estate can owe him nothing, and if the other parties deceived him, directly or indirectly, he must look to them for compensation."

The auditing judge disallowed the claim. Exceptions to the adjudication were dismissed.

*Errors assigned* were dismissal of exceptions.

*Henry W. Palmer*, for appellant.—The writings conveyed to Leavenworth all the interest of the widow and mother in the assets of the firm. Among the assets is a claim of the firm against Miller for the money misappropriated by him.

*C. R. Bedford* and *C. D. Foster*, for appellees.—The court below has found as matter of fact on sufficient evidence, that the payment of this note by the members of the new firm was part of the consideration of the sale of the widow's interest to Mr. Leavenworth, and the purchase by the latter was expressly subject to payment of the firm debts against which he agreed to indemnify the Miller estate.

OPINION BY MR. JUSTICE GREEN, October 2, 1893:

As it seems to us this case is quite free of difficulty. It cannot be doubted, and is not questioned, that Mr. Leavenworth was bound to pay the debt of $1,300 due to Mrs. Hetty S. Miller. By his contract of purchase he agreed to pay not only the whole of the purchase money for the interest of W. M. Miller in the firm, but also the debts of the firm. While it was supposed, when the negotiations commenced, that this debt had been paid, before they were completed Mrs. Miller announced that it had not been paid, and insisted upon its payment, and thereupon Leavenworth agreed to pay it and subsequently did so. After the transaction was closed it was discovered that the checks, which, on the stubs of the firm's check book, had been entered as being drawn directly to Mrs. Miller, were in fact drawn by W. M. Miller to his own order, and not to the order of his wife, and further that he had drawn the money from bank himself. While it is not at all probable that he did this with any fraudulent purpose, but really intended to give the money to his wife, yet in fact he did not do so, and died before he carried out his intention, if it was to that effect. His situation, therefore, at the time of his death, with reference to this matter, was, that having taken this money himself and not having

charged his account with it, he was a debtor to the firm to that extent. He owed the firm the money, and the firm therefore had a right to be paid the amount of that debt out of his estate. No such payment was ever made, and therefore the firm claimed it from the estate, before the auditor. They were certainly entitled to it, unless, in some way, they had lost the right to have it. It is now contended, as it was in the court below and before the auditor, that because Mrs. Miller, in fixing the amount for which she was willing to sell out her part of her husband's interest in the firm, estimated the assets of the firm and her husband's share of them, by deducting from his credit account of $26,971.08 the sum of $1,300, claimed to have been received by him, and therefore the subject should be treated by the auditor and court with the same effect as if he had paid the money to the firm. But we cannot regard this as a sound contention, first, because it is of no consequence how Mrs. Miller arrived at the sum which she was willing to accept for her share of her husband's interest, and, secondly, because in point of fact Mr. Miller's debt to the firm on this account never was paid. The fact that he had received the money himself was not discovered until after his death, and after the sale of his interest had been made, the bill of sale signed, and possession delivered. Moreover it was not Mrs. Miller who made the sale and received the purchase money, but the Peoples Bank of Wilkes-Barre, as administrator of her husband. It is true an agreement was made between Mrs. Sophia A. Miller, the mother, Mrs. Hettie S. Miller, the wife of W. M. Miller, and George N. Carr, another member of the firm, all of the one part, and F. J. Leavenworth, of the other part, for the sale of the interests of W. M. Miller and George N. Carr in the firm to F. J. Leavenworth at private sale. But the consideration of that agreement was $43,800, of which $9,000 was to be paid to Carr, and the remaining sum of $34,800 was to be paid to the mother and widow in the proportion of $16,000 to the mother, and $18,800 to the widow. In that agreement it was expressly recited that the "said Miller had a credit on the books of said firm individually of the sum of $26,971.08," which was in addition to his one half interest in the firm. So that the parties made their agreement on the basis that the whole sum of $26,971.08 was the true amount of the credit of W. M. Miller

230 MILLER'S ESTATE. MILLER & CO.'S APPEAL.

on the firm books, and not that amount reduced by the sum of $1,300, which Miller owed the firm. The agreement of all the parties was in writing, signed and sealed by them all, and the bill of sale or transfer of Miller's interest was also in writing, signed and sealed by the Peoples Bank of Wilkes-Barre, as his administrator. Both of these agreements were literally carried out and fully executed by the payment of the whole amount of the purchase money, $43,800, by Mr. Leavenworth, and its receipt and distribution by the parties entitled. In all of these transactions the debt due by Miller to the firm was not paid or provided for. Mr. Leavenworth succeeded to the rights of the firm to the extent of his interest therein, and one of those rights was the right to have W. M. Miller's estate pay the debt of $1,300, which he undoubtedly owed to the firm at the time of his death. We think the auditor and court below fell into error in misconceiving the real question at issue. They seem to think that because Mr. Leavenworth was not misled or deceived as to the existence of the debt of the firm to Mrs. Miller, and because there was no fraud or imposition practiced upon him in that regard, the claim of the firm to have this debt paid out of Miller's estate cannot be entertained. It would be changing the written contract of the parties, which cannot be done, because no fraud, mistake or imposition has been shown. But that is not the question. The claim of the firm does not require any change in that contract, but rather its enforcement according to its terms. The only question is, did Miller owe the firm this debt and has it been paid? It is not disputed that he owed it, and it certainly has not been paid, and therefore it should be paid now out of his estate.

The decree of the court below is reversed at the cost of the appellee, and the record is remitted with instructions to make distribution of the fund in accordance with this opinion.